Diane KEMP, Personal Representative of the Estate of Terrance Clay Kemp, Deceased, and Diane Kemp, Individually, Plaintiffs,

v.

PFIZER, INC. and Shiley, Inc., Defendants.

Civ. A. No. 92–71386.

United States District Court, E.D. Michigan, S.D.

Dec. 23, 1993.

David D. Patton, James A. Reynolds, David D. Patton Assoc., Bloomfield Hills, MI, for Diane Kemp.

Charles P. Goodell, Jr., Richard M. Barnes, Goodell, DeVries, Leech & Gray, Baltimore, MD, David Klingsberg, Robin A. Tauber, Kaye, Scholer, Fierman, Hays & Handler, New York City, Richard C. Sanders, Kay R. Butler, Hill Lewis, Detroit, MI, for Pfizer, Inc.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

GADOLA, District Judge.

On October 13, 1993, plaintiffs filed a motion for default judgment based upon alleged misconduct by defendants during the discovery process and because defendants' witnesses and attorneys committed perjury. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), the court dispensed with oral argument. For the reasons discussed below, the court will deny plaintiffs' motion.

### I. Standard of Review

 This court will impose a default judgment as a sanction only in cases of "egregious misconduct." *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir.1988). Such a sanction is "a drastic remedy and should be resorted to only in extreme situations" and as a last resort. *Charlton L. Davis & Co., P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir.1977). In a case where a party has failed to cooperate in discovery, dismissal is warranted only where there has been a showing of "willfulness, bad faith, or fault." *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir.1985). In making its decision, the court will consider such factors as (1) whether plaintiffs were prejudiced by defendants' misconduct; (2) whether defendants were warned that their conduct could result in a default judgment; and (3) whether "less drastic sanctions were imposed or considered" before entering a default judgment. *Regional*, 842 F.2d at 155.

### II. Discovery Misconduct

Plaintiffs allege the following acts of misconduct by defendants during the discovery process: (1) defendants retained one of plaintiffs' expert witnesses; (2) defendants manipulated the contents of the Kemp Product Complaint Review file ("PCR file"); (3) defendants destroyed a deposition exhibit; and (4) defendants removed the PCR file from a stipulated documents examination by plaintiffs' expert. The court will examine each of these allegations in turn.

## A. Dr. Frederick Schoen

■ Plaintiffs have accused defense counsel of contacting and retaining an expert witness who already appeared on plaintiffs' witness list and for whom plaintiffs had submitted a summary of testimony.

In September 1992, plaintiffs' counsel first contacted Dr. Frederick Schoen, an expert cardiac pathologist. In response, Dr. Schoen sent plaintiffs' counsel his resume. Plaintiffs have not established that they retained Dr. Schoen as their expert. They did name him on their witness lists in February 1993 and April 1993, provide his curriculum vitae to defense counsel in July 1993, and provide a summary of his testimony to defense counsel in August 1993. On September 23, 1993, plaintiffs' counsel contacted Dr. Schoen to discuss the case. Dr. Schoen indicated that he had been retained by defendants as a consultant in connection with heart valve litigation and that he would not consult with plaintiffs.

Defense counsel has established, however, that Dr. Schoen assured them that he had not been retained in any other case involving heart valves manufactured by defendants. Defendants contend that plaintiffs never retained Dr. Schoen and that attorneys working on an entirely different case for defendants, but belonging to the same firm, were the ones who contacted the doctor. Dr. Schoen was not contacted or retained by the attorneys working on this case.

The court finds that plaintiffs have failed to show that the retention of Dr. Schoen by defendants will cause any prejudice to their case. Plaintiffs have retained three other cardiac experts in this matter. Additionally, plaintiffs have not established that they even retained Dr. Schoen, or that defense counsel acted in bad faith. At its worst, counsel for defendants should have been more careful in coordinating the activities of the various attorneys working on heart valve litigation for defendants. A lack of caution, without more, does not justify a default judgment.

## B. PCR File Manipulation

■ Plaintiffs have made several strong allegations that defendants manipulated and altered the contents of the PCR file during the course of discovery. Plaintiffs have submitted a chart detailing missing portions of the PCR file and defendants' misconduct.

The court finds, however, that plaintiffs' allegations are without merit. The documents that were allegedly missing from the file can be easily explained. In several instances, defendants asserted claims of attorney/client or work product privilege for the "missing" documents. Their absence was noted by page markers. The magistrate judge in this case later ruled on defendants' privilege claims. One document was added to the file during discovery, not because it had previously been withheld, but simply because it had not existed until some time after discovery had been underway. Three other "missing" "documents" were simply page markers used to note the removal of a privileged memorandum. Four other documents were never part of the PCR file because it was defendants' practice not to store them in that particular file. In any event, plaintiffs have not established either prejudice to their case or bad faith or willfulness on the part of defendants. As a result, explainable inconsistencies in the contents of the PCR file do not rise to the level of egregious misconduct deserving of a default judgment.

## C. Destruction of Deposition Exhibit

■ Plaintiffs allege that defendants destroyed the original of a deposition exhibit so as to prejudice their case. On June 29, 1993, plaintiffs took the deposition of Kathleen Schuman, a paralegal employed by one of the defendants. At the deposition, five items were marked as exhibits. Exhibit 4 was a page marker that was placed in a file to represent a document that defendants claimed was privileged. On July 22, 1993, counsel for plaintiffs noticed that exhibit 4, the page marker, was missing. Apparently, counsel for defendants had lost the original copy of the page marker, but had retained a copy of it. Exhibit 4 reads in full as follows:

### DOCUMENT MEMORANDUM

One page has been removed from this file because it is privileged.

It seems that plaintiffs' argument is that the original copy of exhibit 4 may have been

imprinted with handwriting from a document that was placed over the page marker, and that using ESDA analysis they may have found something favorable to their case.[1]

The court, however, finds that the loss of the page marker was merely accidental and that plaintiffs have demonstrated no prejudice to their case. The page marker was inserted in May 1993, over a year after the start of the litigation. It seems unlikely that incriminating statements would have been written on top of the page marker during the few months it may have been in the PCR file. It is apparent that plaintiffs have made a mountain out of a mole hill, and that the loss of a page marker cannot serve as the basis for a default judgment.

### D. Removal of PCR File

■ Plaintiffs complain that the PCR file was removed by defense counsel from a documents examination conducted by plaintiffs' expert witness. Pursuant to a stipulated order, on July 22, 1993, counsel for both sides met so that plaintiffs' expert could conduct ESDA analysis of the PCR file. During the examination, counsel for defendants became concerned that the ESDA analysis could reveal privileged information to plaintiffs. As a result, counsel for defendants removed the PCR file from the examination site for approximately ninety minutes in order to confer with other attorneys concerning the unexpected privilege issue.

Plaintiffs allege that defense counsel could have altered the contents of the file during the ninety minute recess. The court finds, however, that plaintiffs have provided no support for this claim. Additionally, plaintiffs have made no showing of prejudice that resulted from the removal of the file for ninety minutes. Plaintiffs' expert was still allowed plenty of time to conduct the stipulated examination. Defense counsel's removal of the PCR file appears justified given the circumstances.

### III. Perjury

■ Plaintiffs also accuse several of defendants' attorneys and employees of committing perjury. Plaintiffs state that "[d]efendants have been remarkably consistent in their complete disregard for ethical conduct." The court will examine each accusation of "perjury" to determine the merits of plaintiffs' claim.

### A. Marc Francis and Kathleen Schuman

Marc Francis is an assistant corporate counsel for defendant Pfizer. Kathleen Schuman is a paralegal employed by defendants' Shiley Heart Valve Research Center. On May 27, 1992, Schuman prepared a memorandum at the direction of attorney Francis to be sent to Frederick Thiede, the manager of regulatory compliance at defendant Shiley. In the memorandum, Schuman stated that Shiley defense counsel had been advised that a death had occurred, allegedly the result of a fracture of defendants' medical device. The memo went on to describe the information that they had and the opinion of a nontestifying medical expert. The memorandum was copied to Francis. Defendants initially did not release the memorandum, claiming that it was privileged. On September 15, 1993, Francis and Schuman submitted affidavits in support of defendants' privilege claim. Defendants also submitted the memorandum for in camera review and determination of the privilege issue.

Plaintiffs argue that Francis and Schuman's statements in their affidavits that the memorandum contained attorney Francis's "mental impressions" and the opinion of a nontestifying expert were false and amounted to perjury. The court finds, however, that plaintiffs have failed to establish that their statements amounted to "perjury." The parties had a legitimate dispute over whether the document at issue was privileged. Plaintiffs have made no showing that the dispute was not in good faith and that a reasonable person could not have asserted a claim of privilege in this instance. As a result, plaintiffs' request for default judgment based on this dispute is without merit.

---

1. ESDA analysis is technique whereby written documents are recreated from impressions they leave on underlying sheets of paper.

### B. Daniel Johnston and James Willhite

Daniel Johnston is the corporate designee of defendants Pfizer and Shiley. Plaintiffs allege that defendants committed perjury when Johnston signed two answers to requests for admissions on October 7, 1992 submitted by plaintiffs. In the requests, plaintiffs asked defendants to admit that the medical device that they manufactured had fractured and caused the death of plaintiffs' deceased. In their response, defendants admitted that the device at issue had fractured, but stated that they were "without knowledge or information readily obtainable by either of them to form a belief as to the truth" of plaintiffs' contention that the fracture was the cause of death. Furthermore, defendants point out that they have only been able to depose the medical examiner in this case in September 1993, almost a year after plaintiffs submitted their request for admissions.

Plaintiffs also accuse James Willhite of perjury. Willhite is an attorney for defendants. In an August 6, 1992 letter, Willhite told plaintiffs that defendants "are unable to conclude that Mr. Kemp's death was caused by a strut fracture." [2] At that time, an autopsy had not even been performed and the only information available was in the medical file. The cause of death could not be conclusively determined from the medical files alone.

The court finds that plaintiffs accusations of perjury with regards to defendants' corporate designee and attorney Willhite are wholly without merit. Plaintiffs seem to contend that defendants should have conceded an important element of the case at a point very early in discovery, before defendants had a sufficient opportunity to investigate a death that had occurred some six years before the litigation had commenced. As a result, defendants' response that they were unable to admit that their medical device had caused the death of plaintiffs' decedent and Willhite's even earlier refusal to make such an admission before the autopsy took place do not warrant entry of a default judgment.

### C. Kevin Hendrick

Kevin Hendrick is an attorney for defendants. Plaintiffs accuse Hendrick of committing perjury in a sworn affidavit that he submitted in support of defendants' motion for summary judgment as to plaintiffs' exhumation claims. In the affidavit, Hendrick stated that before the exhumation and autopsy of the decedent occurred, "defendants obtained the medical records pertaining to Mr. Kemp's death." He said, "[t]hese were the only medical records relating to Mr. Kemp's death, and they were equally available to both parties." Plaintiffs claim that this statement is false because defendants had retained a Dr. Ehrenhaft as a nontestifying cardiac expert to examine the medical files. Dr. Ehrenhaft apparently concluded that a fracture of defendants' medical device was the likely cause of death of plaintiffs' decedent. Because defendants did not provide plaintiffs with Dr. Ehrenhaft's report, plaintiffs claim that all of the information was not equally available to both sides.

The court finds that plaintiffs' accusation of perjury against attorney Hendrick is unfounded. He made a true statement of fact when he said that all of the medical records were available to both sides. The fact that different experts may have come to certain conclusions or opinions is irrelevant to Hendrick's accurate statement in his affidavit. Plaintiffs even admit that Mr. Kemp's medical files were available to both sides. As a result, it is clear that attorney Hendrick made no false statements in his sworn affidavit, and thus did not commit perjury.

### D. Dr. Roger Sachs

Dr. Roger Sachs is the Vice President of Medical and Regulatory Affairs of defendant Pfizer's Hospital Products Group. Plaintiffs took Dr. Sachs's deposition in June 1993. During the deposition, plaintiffs' counsel asked Dr. Sachs about whether handwriting analysis had been performed on certain man-

---

**2.** Plaintiffs also accuse Willhite of committing "perjury" during a telephone call in which he told plaintiffs' counsel that the small heart valves at issue in this case do not fracture. In response to this claim, the court merely notes that there is a factual dispute concerning this issue and that "perjury" cannot be committed in an unsworn letter or telephone conversation.

ufacturing records known as "baggie cards." During the deposition, Dr. Sachs was asked the following question: "Was there a handwriting analysis or investigation performed on these baggie cards?" Dr. Sachs simply responded: "I don't know." Plaintiffs contend that he did know. Their sole basis for this contention is the fact that in October 1991 and December 1991, Dr. Sachs was included in the copy count for two letters sent by a law firm for defendants to the Food and Drug Administration in which the handwriting analysis of baggie cards was discussed.

The court finds that plaintiffs' accusation of perjury is wholly without merit. The deposition of Dr. Sachs took place over two years after he allegedly was placed on the copy count for two letters prepared by defendants' law firm. Contrary to plaintiffs' belief, "I don't know" does not always mean "I am lying." Plaintiffs' request for a default judgment based on their flimsy accusations of perjury is unfounded in fact or law.

### E. Conclusion

Plaintiffs have not established that any of defendants' employees or attorneys committed perjury. Plaintiffs have attempted to use factual and legal disputes that have occurred in the context of this litigation as vehicles for their allegations of perjury and misconduct in their effort to seek a default judgment. Plaintiffs have in no way demonstrated "egregious misconduct" or willful acts sufficient to support entry of a default judgment. Furthermore, plaintiffs' "request" that this court refer the perjury and discovery misconduct allegations in "this matter to the Michigan State Bar Attorney Grievance Commission, and the appropriate disciplinary agencies of the New York State Bar, the California State Bar, and the Pennsylvania State Bar" is frivolous and wholly without merit.

### IV. Sanctions

On its own initiative, the court finds that Rule 11 of the Federal Rules of Civil Procedure requires that it impose sanctions on plaintiffs' counsel. Rule 11 states:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading ...; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

Plaintiffs' accusations of perjury and request for referral of this matter to state bar disciplinary committees are not well grounded in fact and are not warranted by existing law or even a good faith argument for extension or modification of existing law. The court references its own discussion of the merits of plaintiffs' perjury accusations in Part IV of this memorandum opinion. Plaintiffs' counsel has attempted to turn reasonable legal disputes into an occasion to use the ugly accusation of "perjury" against six different individuals employed by defendants or acting as defense counsel. Furthermore, plaintiffs' request that this matter be referred to state bar disciplinary committees has no basis and is inflammatory. Plaintiffs' counsel has not even demonstrated one episode of misconduct on the part of any of the attorneys employed by defendants. Thus, mention of the state bar committees by plaintiffs' counsel was unnecessary, unreasonable, and extreme. Plaintiffs' claims that defendants "have been remarkably consistent in their complete disregard for ethical conduct" and that defendants have made a "mockery

of the civil justice system" go beyond the bounds of reasonable and professional commentary before this court. Accusations of "conspiracy," "fraud," and "witness tampering" do not serve the adjudication of this dispute.[3]

The court finds that plaintiffs' counsel has violated Rule 11 of the Federal Rules of Civil Procedure by either failing to perform a reasonable inquiry into the facts and law supporting his accusations of perjury or because plaintiffs' motion for default judgment was intended to harass or to cause unnecessary delay. The court will order plaintiffs' counsel to pay defendants $600.00 as a reasonable expense incurred in responding to plaintiffs' accusations of perjury. The total sum is apportioned in that $100.00 is awarded for each unfounded accusation of perjury.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiffs' motion for default judgment is DENIED.

IT IS FURTHER ORDERED that plaintiffs' counsel shall PAY to defendants the amount of $600.00 as a reasonable expense incurred, including legal fees, and that such sanction shall be fully borne by plaintiffs' counsel and not by plaintiffs.

SO ORDERED.

---

**3.** Plaintiffs even go so far as to say that to "permit the conduct of Defendants ... to go unchecked would trivialize the values of our society that the judicial system is established to safeguard. For those who still believe in the power of the law to achieve justice, Defendants' conduct is an outright assault upon that belief." Plaintiffs also allege that there "appear to be no limits to the unethical actions Defendants will take to prevent truthful disclosure of facts relevant to Plaintiffs' claims."